**Edna WOODALL and Alfreda K., Individually and on behalf of all others similarly situated, Plaintiffs,**

v.

**Nicholas BARTOLINO, County Adjuster for the County of Mercer, and Bill Mathesius, County Executive for the County of Mercer, Defendants,**

**State of New Jersey, Intervenor.**

**Civ. A. No. 85–1781(MTB).**

United States District Court, D. New Jersey.

Oct. 24, 1985.

Alfred A. Slocum, New Jersey Public Advocate by Terry A. Coble, Deputy Public Advocate, and Arthur J. Rosenberg, Deputy Director, for plaintiffs.

Paul T. Koenig, Jr., Mercer County Counsel by Felice Weiner, Asst. Mercer County Counsel, for defendants.

W. Cary Edwards, Atty. Gen. of New Jersey by Dennis Conklin, Deputy Atty. Gen., for intervenor.

## OPINION

BARRY, District Judge[1].

Plaintiffs, Edna Woodall and Alfreda K., bring this action to challenge the proce-

---

1. This opinion, now three years old, is being published at the request of Arthur J. Rosenberg, Deputy Director of the Division of Mental Health Advocacy, New Jersey Department of the Public Advocate, who represented plaintiffs in the proceedings subsequent to this decision. Although Mr. Rosenberg has requested publication in part because of the intervening *per curiam* decision of the Supreme Court of the United States in *Bennett v. Arkansas,* —— U.S. ——,

108 S.Ct. 1204, 99 L.Ed.2d 455 (1988), the reader is reminded that the law applied in this opinion was the law in effect as of the date of the filing of the opinion. No view is now expressed, by virtue of the publication of this opinion on this date, as to the continued validity of—nor do I intend by this observation to cast any doubt upon—any authority cited herein.

dures by which defendants, Nicholas Bartolino and Bill Mathesius, officials of the County of Mercer, obtain orders requiring individuals who have been hospitalized in New Jersey state psychiatric institutions to make payments, from whatever source, for their hospitalization. Plaintiffs also challenge the practice by Mercer County officials of obtaining judicial orders against the Social Security benefits of these individuals and of obtaining such orders without first determining whether the costs of hospitalization are already covered by federal Medicare benefits.

Plaintiffs seek a declaration that the state statute and court rule, N.J.S.A. 30:4–34 and N.J.Ct.R. 4:74–7(h), which govern the entry of judgments for payment of the costs of hospitalization, violate their rights to due process of law most particularly because they allow judgment to be entered without notice or opportunity to be heard by the court. Plaintiffs ask, as well, for a declaration that their Social Security benefits are exempt under federal law, 42 U.S.C.A. § 407 (1983), from any legal process by which defendants might seek to alienate them and that federal law, 42 U.S.C.A. § 1395cc(a)(1)(A) (1983), prohibits defendants from charging them for services already reimbursed through the Medicare program. Plaintiffs also ask this court to grant appropriate injunctive relief and their application for a preliminary injunction is currently before the court. Defendants and the State of New Jersey, whom I have permitted to intervene because this action purports to concern the constitutionality of a state statute and what may be widespread practices within the state, oppose this application.

## I

Plaintiffs ask this court to certify a class of 1) all Mercer County residents receiving Social Security benefits who have been or in the future will be hospitalized in a New Jersey state psychiatric institution *and* who have been or in the future will be ordered to pay for their hospitalizations from their Social Security benefits, and 2) all persons who now act or in the future will act as representative payees for such Mercer County residents. Neither the defendants nor the state intervenor has submitted any opposition to class action certification or to the evidence plaintiffs have submitted in support thereof. Nonetheless, this court has an independent obligation to assure itself that class certification is appropriate and that each of the requirements has been met.

In order for this court to certify a class action, the proposed class must meet the requirements of Rule 23(a) of the Federal Rules of Civil Procedure and also meet the requirements of one of the three subsections of Rule 23(b). Rule 23(a) provides:

> one or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Plaintiffs estimate that approximately 642 Mercer County residents were receiving Social Security disability benefits on the basis of a primary diagnosis of a mental disorder as of December 1982.[2] Approximately 126 Mercer County residents are found eligible each year for Social Security disability benefits by reason of men-

---

After the issuance of this opinion, this matter was transferred to another judge of this district. On April 7, 1988, the Honorable Robert E. Cowan, now a judge of the United States Court of Appeals for the Third Circuit, entered an order granting plaintiffs' motion for summary judgment and making permanent the preliminary injunction granted by virtue of this opinion.

700 F.Supp. 221 The full subsequent history of this case may be found in the official file available from the Clerk of the Court in Trenton, N.J.

2. U.S. Department of Health and Human Services, Social Security Administration, SSA Pub. No. 13–11947, Characteristics of Social Security Disability Insurance Beneficiaries, Table 12 (1983).

tal disorder.[3]

▉ Due to the severity of illness required to be found eligible for Social Security disability benefits, many of these individuals either already have been hospitalized or are at risk of being hospitalized in a state psychiatric institution. Once they are hospitalized, defendant Bartolino, County Adjuster for the County of Mercer, will conduct a hearing and judicial orders against their Social Security benefits may be entered. While certain of these individuals are self payees and thus, of course, are affected by such orders, many have their benefits paid in a representative capacity to a payee who can better manage the funds.[4] These representative payees, who are often relatives or friends, would also be proper class members. An undetermined number of Mercer County residents who receive Social Security benefits under the retirement program also suffer from disabling mental disorders which may require hospitalization in a state psychiatric facility, and these individuals would be proper class members as well. Plaintiffs have established that they meet the numerosity requirement of Rule 23(a).

It is clear to the court that the class, as defined, presents identical questions of law arising from nearly identical factual situations, and thus the commonality requirement of Rule 23(a) is met. Similarly, the claims of the named plaintiffs are typical of those of the class because they arise from the same events or practices or course of conduct that give rise to the claims of other class members, and plaintiffs' claims are based on the same legal theories. 1 *Newburg on Class Actions*, § 1115 (1977); *Weiss v. York Hospital*, 745 F.2d 786, 809 (3d Cir.1984); *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555 (2d Cir.1968); *Steiner v. Equimark Corp.*, 96 F.R.D. 603, 609 (W.D.

Pa.1983); *Christy v. Hammel*, 87 F.R.D. 381, 392 (M.D.Pa.1980).

The court must look at two factors in determining whether the representative parties will adequately protect the interests of the class: (1) absence of interests antagonistic to the class, and (b) assurance of vigorous prosecution. *Sosna v. Iowa*, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975); *Malchman v. Davis*, 706 F.2d 426, 433 (2d Cir.1983). Plaintiffs stand only to gain, rather than lose, from this action, and I do not foresee any situation arising in which the interests of the named plaintiffs will be antagonistic to any other members of the class. Moreover, because plaintiff Woodall has been threatened with contempt proceedings due to her assertion of a right not to have plaintiff Alfreda K.'s Social Security benefits alienated, and because plaintiffs are represented by the Department of the Public Advocate, which is charged with representing all those hospitalized in state psychiatric facilities who do not have their own attorneys, I believe the representative parties here will more than adequately represent the class.

Once it is determined that plaintiffs meet the requirements of Rule 23(a), the court must also determine whether they meet the requirements of one of the subsections of Rule 23(b). I believe that this action is most properly maintained under Rule 23(b)(2), which states that a class action is maintainable if:

> (2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

Plaintiffs challenge the adequacy of the process afforded under N.J.S.A. 30:4–34 and N.J.Ct.R. 4:74–7(h), both on their face

---

**3.** *Id. See also*, U.S. Department of Health and Human Services, Social Security Administration, SSA Pub. No. 13–11954 Social Security Beneficiaries by State and County, December 1982, Table 2 (1984).

**4.** A representative payee is selected by the Social Security Administration when it is "determined that the beneficiary is not able to manage or direct the management of [Social Security

and Supplemental Social Security] benefit payments in his or her own interest." 42 U.S.C. § 405(j) and 20 C.F.R. § 404.2001; 42 U.S.C. § 1383(a) and 20 C.F.R. § 416.601. For our purposes, the regulations governing payments to representatives are the same under both programs. 20 C.F.R. § 404.2001 *et seq.* and 20 C.F.R. § 416.601 *et seq.*

and as applied, prior to the entering of judgments requiring payment from whatever source for hospitalization. But the class is defined in terms of those who have been or will be ordered to pay for their hospitalizations from their Social Security benefits and those who now or in the future will act as representative payees for such persons; indeed, the named plaintiffs' only source of income is their Social Security benefits. As so defined, defendants act against the entire class, any relief afforded by this court will affect the entire class equally, and certification under Rule 23(b)(2) will be ordered.[5] This court will deal with the issues presented in terms of the class as defined and will leave to another day the question of whether procedures set forth and followed under the statute and rule in circumstances involving payment from other than Social Security benefits are appropriate and lawful.[6] As to that question, which implicates important federal/state concerns and relationships, there is nothing before the court to indicate that there now exists a justiciable case or controversy.

## II

On a motion for a preliminary injunction the court must weigh four factors: (1) whether the moving party has shown a reasonable probability of success on the merits; (2) whether the moving party will be irreparably injured by denial of injunctive relief; (3) whether granting preliminary relief will result in even greater harm to the non-moving party; and (4) whether granting preliminary relief will be in the public interest. *SI Handling Systems, Inc. v. Heisley, et al.,* 753 F.2d 1244, 1254 (3d Cir.1985); *Klitzman, Klitzman &*

*Gallagher v. Krut,* 744 F.2d 955, 958–59 (3d Cir.1984).

On June 18, 1985, this court held an evidentiary hearing on plaintiffs' application. On the basis of the legal arguments and evidence presented to the court and the stipulated facts, this court finds that, as a matter of law, defendants may not seek and use the power of the state courts to enforce the application of Social Security benefits to the cost of hospitalization and, thus, that plaintiffs are likely to prevail on the merits of this claim. This court finds, as well, that without an injunction plaintiffs will be irreparably injured and with an injunction defendants will be but minimally harmed and the public interest will be served. A preliminary injunction will, therefore, be granted as to this issue. Given this result, plaintiffs' claim that "such" judicial orders cannot be obtained without first determining whether the costs of hospitalization are covered by Medicare benefits falls of its own weight.

### A

The following facts are undisputed:

1. Defendant Bill Mathesius is the County Executive of the County of Mercer, State of New Jersey.

2. Defendant Nicholas Bartolino is the County Adjuster of the County of Mercer, State of New Jersey.

3. Defendant Bartolino's office serves written notice to hospitalized individuals and their court-appointed attorneys of the commitment hearings which are held to determine whether the individual must remain at the hospital.

4. As part of his duties, defendant Bartolino performs investigations into the financial ability of hospitalized individuals

---

5. Rule 23(b)(2) certification is unnecessary and, thus, is overused on those occasions as to which it can fairly be said that an individual action for an injunction, if successful, will result in compliance with the injunction as to all persons affected by the practice which has been enjoined. This, I suggest, may well be such an action but, there being no opposition to class certification and no representation that the practice will cease pending final disposition on the merits, certification will be ordered.

6. The state intervenor suggests that resolution of plaintiffs' claims is dependent upon an interpretation of the hitherto uninterpreted statute and rule and, therefore, that I should abstain under *Railroad Commission of Texas v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). I disagree. As alluded to above, I will be interpreting and applying federal law and will not reach questions with reference to the statute and rule.

and their relatives to pay for the hospitalization.

5. Two of defendant Bartolino's employees in the Mercer County Adjuster's office are investigators, whose function is to investigate the financial ability and the residency of each and every patient of a state psychiatric facility who is a resident of Mercer County.

6. Defendant Bartolino has been appointed by the Superior Court of New Jersey to hold hearings concerning the financial ability of Mercer County residents to pay for hospitalization.

7. Defendant Bartolino provides notice to representative payees of the hearings he holds to determine the financial ability of the hospitalized individual to pay for the hospitalization.

8. Defendant Bartolino does not notify the hospitalized individual's appointed counsel of the hearings he conducts.

9. At these hearings, defendant Bartolino takes testimony from witnesses whose attendance he is authorized to compel.

10. Based on the above investigations and testimony, defendant Bartolino submits proposed orders to the Superior Court of New Jersey recommending that specific amounts be paid by individuals.

11. In submitting the proposed orders, defendant Bartolino utilizes forms which specifically provide that "[A]ny amount available from ... Social Security benefits [and] Hospitalization Insurance ... shall be applied toward the cost of care."

12. At the time of the hearing, defendant Bartolino does not know to which judge he will be submitting the order and therefore does not notify affected individuals of the name of the judge.

13. Defendant Bartolino does not notify affected individuals of the date he intends to submit the proposed order.

14. Under existing procedures in Mercer County, no opportunity has been provided to affected individuals to present arguments to the Superior Court prior to the entry of court orders against them.

15. No hearings are held by Superior Court judges prior to signing the orders proposed by defendant Bartolino.

16. Plaintiff Alfreda K. is an adult citizen of the United States and a resident of the State of New Jersey, County of Mercer, residing with her mother, plaintiff Edna Woodall. Alfreda K. is thirty-six years old.

17. Plaintiff Alfreda K.'s only sources of income are Social Security benefits based on her deceased father's earnings and Supplemental Security Income benefits by virtue of her mental retardation and mental illness.[7] She is also a beneficiary of the federal Medicare program.

18. Plaintiff Woodall serves as plaintiff Alfreda K.'s representative payee.

19. Plaintiff Woodall is a citizen of the United States and a resident of the State of New Jersey, County of Mercer. She is sixty-three years old.

20. Plaintiff Woodall's sole income is Social Security Retirement benefits of $268.00 per month (Aff. ¶ 3).

21. Since 1981, defendant Bartolino has sought and obtained several orders against plaintiff Alfreda K. and her mother and representative payee, plaintiff Woodall, requiring that they make payment for her hospitalizations from plaintiff Alfreda K.'s Social Security benefits.

22. On September 3, 1981, defendant Bartolino held a hearing attended by plaintiff Woodall.

23. On September 3, 1981, defendant Bartolino obtained an Order from the Superior Court of New Jersey which, as amended by Order dated July 14, 1983, requires that plaintiff Alfreda K. pay three dollars and forty-two cents ($3.42) per day for her hospitalization.

24. On August 26, 1982, defendant Bartolino held a hearing attended by plaintiff Woodall.

---

**7.** The affidavit of plaintiff Woodall avers at ¶ 5 that "Alfreda's sole income consists of $320.00 per month in Social Security benefits and an additional $45.00 per month in SSI benefits while she is not at Trenton Psychiatric Hospital."

25. On August 26, 1982, defendant Bartolino obtained an Order from the Superior Court of New Jersey which requires that plaintiff Alfreda K., through her mother and representative payee, plaintiff Woodall, pay one hundred and eighty-five dollars ($185.00) per month for her hospitalization.

26. On May 16, 1984, defendant Bartolino held a hearing attended by plaintiff Woodall, her cousin Pearl Mitchell and Terry Coble, Esquire, counsel for plaintiff Alfreda K.

27. On August 30, 1984, defendant Bartolino obtained an Order from the Superior Court of New Jersey which requires that plaintiff Alfreda K., through plaintiff Woodall, pay one hundred and eighty-five dollars ($185.00) per month for her hospitalization.

28. Each of the orders described above provides that "[A]ny amount available from ... Social Security benefits [and] Hospitalization Insurance ... shall be applied toward the cost of care."

29. On May 31, 1984, counsel for defendant Bartolino obtained an Order to Show Cause from the Superior Court of New Jersey why plaintiff Woodall should not be held in contempt for failing to obey the Order of August 26, 1982 that she pay one hundred and eighty-five dollars ($185.00) per month from plaintiff Alfreda K.'s federal benefits for her hospitalization.

30. By letter dated November 30, 1984, counsel for defendant Bartolino stated his intent to "apply to the Court for an Order to Show Cause," if plaintiff Woodall did not comply with the Order of August 30, 1984 that she pay one hundred and eighty-five dollars ($185.00) per month from plaintiff Alfreda K.'s federal benefits for her hospitalization.

B

■ Plaintiffs assert that § 207 of the Social Security Act, 42 U.S.C. § 407 (1983), bars the County from seeking judgment for payment of hospitalization costs from plaintiffs' Social Security benefits. Defendants reject that assertion and argue that state court orders are a valid means of enforcing the duty of beneficiaries and of representative payees imposed by federal law to contribute towards the cost of institutionalization.

Section 407 states:

(a) The right of any person to any future payment ... shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, or other legal process ...

(b) No other provision of law, enacted before, on or after the date of the enactment of this section, may be construed to limit, supercede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

This provision covers benefits received under the Supplemental Security Income program as well. 42 U.S.C. § 1383(d)(1).[8]

The Supreme Court rendered its only interpretation of this statute in *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S.Ct. 590, 34 L.Ed.2d 608 (1973). The petitioner in that action had applied for, and received, financial assistance from the county welfare board. As a condition of receiving that assistance, petitioner was required to execute an agreement to reimburse the county for any payments received. Petitioner also applied for disability insurance benefits under § 223 of the Social Security Act and approximately one and one half years after beginning to receive welfare assistance, petitioner was awarded retroactive disability benefits, which were placed in a bank account in trust for petitioner. The county sued to obtain the bank account funds. Although,

---

**8.** And see 20 C.F.R. 404.1820 which provides that, other than a legal obligation to provide child support or make alimony payments with legal process issued to enforce this obligation, "we shall not certify payment to (1) any person designated as your assignee or transferee; or (2) any person claiming payment because of an execution, levy, attachment, garnishment, or other legal process, or because of any bankruptcy or insolvency proceeding against or affecting you."

on its face, § 407 barred the county from reaching these funds by means of legal process, the county argued that if petitioner had been receiving the payments all along, instead of receiving a lump sum of retroactive benefits, it would have been able to reduce its welfare payments to petitioner accordingly. The Court found no reason to imply an exemption from § 407 on that ground, and stated:

> We see no reason why a State, performing its statutory duty to take care of the needy, should be in a preferred position as compared with any other creditor. *Id.* at 416, 93 S.Ct. at 592.

The Court noted that § 407 "imposes a broad bar against the use of any legal process to reach all social security benefits." *Id.* at 417, 93 S.Ct. at 592.

There has been some disagreement among the courts in applying § 407. The state intervenor argues that this court should follow the decision of the Fifth Circuit in *Department of Health and Rehabilitative Services, State of Florida v. Davis,* 616 F.2d 828 (5th Cir.1980), in which the court found that the guardian of a man who had resided in a Florida state hospital continuously for almost thirty years, and who had in that time accumulated over $40,000 in Social Security and veterans' benefits, must pay a portion of those benefits to the state for the care of the institutionalized individual. The court distinguished its case from *Philpott* by observing that, while the benefits recipient in *Philpott* was capable, at least in part, of providing for his own care, here the state was meeting all of the recipient's needs. In essence, the court found that the guardian would never be able to use the benefits for the care of her ward, thus circumventing the purpose of the program, which is to provide for the care and maintenance of recipients. *Id.* at 830–31.

Under this extreme case, the Fifth Circuit found that neither the purpose of the program, nor the purpose of the exemption in § 407, i.e. to protect beneficiaries from creditor's claims, would be accomplished by barring the state from obtaining reimbursement.

There are a number of reasons why *Davis* should not now be followed. First, it is possible that it has been legislatively overruled. § 407 was amended in 1983 to include subsection (b), which states that § 407(a) can only be modified by express reference. The legislative history of the amendment reveals that Congress intended to strengthen subsection (a) by the amendment.

> Since 1935 the Social Security Act has prohibited the transfer or assignment of any future social security or SSI benefits payable and further states that no money payable or rights existing under the Act shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.
>
> Based on the legislative history of the Bankruptcy Reform Act of 1978, some bankruptcy courts have considered social security and SSI benefits listed by the debtor to be income for purposes of a Chapter XIII bankruptcy and have ordered SSA in several hundred cases to send all or part of a debtor's benefit check to the trustee in bankruptcy.
>
> Your Committee's bill specifically provides that social security and SSI benefits may not be assigned notwithstanding any other provisions of law, including P.L. 95–598, the 'Bankruptcy Reform Act of 1978.' H.R.REP. NO. 98–25, 98th Cong., 1st Sess. 82–83 (1983). *See also,* HOUSE CONF.REP. NO. 98–47, 98th Cong., 1st Sess. 153 (1983), U.S.Code Cong. & Admin.News 1983, pp. 143, 301, 302, 443.

This amendment thus clearly supercedes cases which had held that bankruptcy courts could order the use of Social Security benefits to pay creditors. *See Matter of Treadwell,* 699 F.2d 1050, 1053 (11th Cir. 1983); *United States v. Devall,* 704 F.2d 1513, 1516 (11th Cir.1983).

Other courts have upheld the broad bar of § 407 when attempts have been made to alienate Social Security benefits from both recipients and representative payees. In *Tidwell v. Schweiker,* 677 F.2d 560 (7th Cir.1982), the court found that a consent

form, which a state psychiatric facility asked those seeking hospitalization to sign authorizing the facility to reimburse itself for the cost of hospitalization from the Social Security benefits of the individual, violated § 407. This conclusion was reached because the form did not clearly inform individuals that their decision to reimburse the facility was voluntary, that they would receive treatment despite a refusal, and that their benefits were not otherwise subject to legal process. *Id.* at 563–64. The holding in *Tidwell* is contrary to all but an extremely narrow reading of *Davis.*

Federal courts have also enforced the protection of § 407 from post judgment garnishment procedures which allowed the garnishment of bank accounts containing Social Security funds where the procedures did not clearly distinguish these funds. *See Finberg v. Sullivan,* 634 F.2d 50 (3d Cir.1980) (bank accounts may not be attached without regard to whether they contain Social Security funds). *See also, Reigh v. Schleigh,* 595 F.Supp. 1535, 1555, n. 15 (D.Md.1984) (notice to debtors must inform them of exemption of Social Security benefits from attachment); *Dionne v. Bouley,* 583 F.Supp. 307, 319 (D.R.I.1984), *aff'd* 757 F.2d 1344 (1st Cir.1985); *Deary v. Guardian Loan Co., Inc.,* 534 F.Supp. 1178, 1187–88 (S.D.N.Y.1982). Federal courts have even invoked § 407 to protect benefits from efforts by the Social Security Administration to obtain reimbursement for past overpayments, *McKenzie v. Heckler,* 605 F.Supp. 1217, 1219 (D.Minn.1985) (SSA may not subtract SSI benefits received from award of retroactive disability benefits); *Page v. Heckler,* 596 F.Supp. 1543 (M.D.Pa.1984) (even voluntary cross-program recovery by SSA disallowed under § 407); *McDaniels v. Heckler,* 571 F.Supp. 880 (D.Md.1983) (SSA could only seek reimbursement for overpayments of SSI from disability benefits if notice was given that such reimbursement was voluntary); *Ellender v. Schweiker,* 575 F.Supp. 590 (S.D. N.Y.1983) (§ 407 prohibits voluntary as well as involuntary transfers or assignments of benefits).

The above cases demonstrate how closely and carefully the courts have followed the language of § 407. In light of these cases, *Department of Health and Rehabilitative Services v. Davis, supra,* can only be read to have continuing life, if indeed it has continuing life, if it is limited to the extreme factual situation presented to the Fifth Circuit in that case. The individual in *Davis* had been in state institutions for almost thirty years, had long been judged incompetent, had little hope of ever emerging from the institution in which he resided, and his guardian had accumulated a large amount of funds which, because of this individual's situation, would almost certainly never be used for his care and maintenance unless they were turned over to the state which was providing for his care and maintenance and had been for years. Here, of course, plaintiff Alfreda K. has been intermittently institutionalized and otherwise resides with plaintiff Woodall.

It appears that plaintiffs do not challenge the assertion of defendants and the state intervenor that, by statute and regulation, representative payees have the responsibility to contribute towards the current maintenance of an individual while that individual is in an institution. Rather, they contest the conclusion that the state may enforce this responsibility through court orders directing that payment be made to state or county institutions and complain, in an issue to be addressed later, that they will suffer irreparable harm if "forced … to sign over a portion or all of the social security or SSI benefits." (Pl. Br. at 26). Both sides are half right. While the regulations clearly establish that it is entirely appropriate that at least a portion of the benefits be utilized for the current maintenance charges of the patient, it is the responsibility of the *federal* government, not the state, to enforce the duties of a representative payee, and such enforcement is limited to liability for the misuse of funds and the appointment of a new payee. 20 C.F.R. §§ 404.2041, 404.-2050.

In accordance with 20 C.F.R. § 404.2035, a representative payee has a responsibility to:

(a) Use the payments he or she receives only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary.

Under the regulations, payments will be considered to have been utilized for the use and benefit of the beneficiary "if they are used for the beneficiary's current maintenance," § 404.2040(a), and if a beneficiary is receiving care in an institution "because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution." § 404.2040(b).

The state intervenor relies on the Program Operations Manual System (POMS) used by the United States Department of Health and Human Services in implementing the regulations discussed above to support its conclusion that federal guidelines hold that state court orders directing payment to an institution are valid and enforceable. Two sections of the POMS discuss the use of legal process. In § 00602.110, a discussion of payment of the beneficiary's past debts, the POMS recognizes that

Sections 207 [42 U.S.C. § 407] and 1631(d)(1) of the Act exempt Title II and Title XVI benefits respectively, either before or after payment, from execution, levy, attachment, garnishment, or other legal process so long as such payments are identifiable.

Section 00602.140 covers attempts by a state or court to direct a representative payee's disposition of benefits. The POMS advises that "prompt, careful, and skillful handling of these situations is needed to avoid unnecessary friction and to protect the beneficiary's right to the use of his benefits." The POMS states at subsection (B) of that section:

If a State court, a legal guardian or a State agency, after having been officially informed of our authority continues to abridge the payee's discretion, the DO [District Office of HHS] should submit all development ... to the ARC, Programs for consultation with the Regional Attorney since a conflict with federal regulations exists.

In subsection (C) of that section, the guidelines state that a payee *may* comply with a court order if "such action would be in the best interest of the beneficiary." Where an order "is not inconsistent with the benefit uses provided for in our regulations and conforms to the uses decided upon by the representative payee," HHS "would not, for the sake of form, challenge the court's authority to issue such an order concerning use of benefits by a representative payee." Implicit in this statement is the understanding that HHS could challenge the court's authority, and indeed that it would, if the court refused to modify its order to be "consistent" with the needs of the beneficiary as determined by HHS and the payee.[9]

Thus, the POMS does not support the assertion that court orders may properly be entered against Social Security benefits when they are managed by representative payees. As plaintiffs point out, such an interpretation of the guidelines would mean that the benefits of self-payees would be protected from legal process while the benefits of beneficiaries with representative

---

9. That the payee's determination is critical is recognized by the State. A manual entitled "Procedures Manual and Treasury Formula: Assessment of Charges to Clients and Legally Responsible Relatives," published by the Bureau of Collections and Adjustments, Office of the Comptroller, Department of Human Services, State of New Jersey, states, at page 10, after paraphrasing the federal regulations to the effect that current maintenance charges are an appropriate use of SSA and SSI payments, that "*at the request* of the representative or self payee, additional deductions can be made which will aid in the client's recovery or improve conditions for the client in the facility." The manual also states, at page 5, that income from Social Security benefits is to be included in the income to be assessed.

payees would not be protected. Neither § 407 nor the regulations leads to such a conclusion. Indeed, it is clear that § 407 is intended to protect Social Security benefits from all attempts to use legal process to alienate them, unless Congress has specifically indicated otherwise.

Plaintiffs are, therefore, correct that defendants may not use the power of the state courts to enforce the application of Social Security benefits to the care and maintenance of an institutionalized individual. But Social Security benefits may be applied to a patient's care and maintenance; indeed, it is "appropriate" that that be done. Thus, while such payments must be voluntary, it is nonetheless clear that a representative payee has a responsibility, if it is possible to do so, to make such payments, a responsibility and exercise of discretion the violation of which can be enforced by removing the representative payee and, perhaps, naming as payee the institution caring for the patient. *See* 20 C.F.R. §§ 404.2041, 404.2050, 416.601(a)(2).

Plaintiffs do not suggest that defendant Bartolino cannot convene a hearing or a meeting with the representative payee and other interested persons to "inquire", N.J. S.A. 30:4–44, into the willingness and ability to pay a sum out of Social Security benefits towards the cost of maintenance and care for the period of time the patient remains institutionalized. At this hearing or meeting, which in this circumstance will be non-adversarial, the representative payee will or will not offer to contribute a certain amount towards that care and maintenance. While the representative payee has discretion in this regard, and while it may be quite clear that, for a variety of reasons, nothing or something can or should be contributed, the exercise of that discretion can be reviewed and enforced by the District Office and not by defendant Bartolino or by the state courts. Plaintiffs have shown a likelihood of success on the merits of the issue that judicial orders cannot be enforced against their Social Security benefits.

### C

Similarly, plaintiffs have shown that they will be irreparably harmed if an injunction does not issue, that this harm would outweigh harm to defendants if the injunction were to issue, and that the public interest will be served by the award of preliminary injunctive relief. The court will not pause to consider these factors at any length given the fact that neither defendants nor the state intervenor has raised an objection to a preliminary injunction on these grounds.

An injury is "irreparable" only if it cannot be undone through monetary remedies. *Spiegel v. City of Houston*, 636 F.2d 997 (5th Cir.1981); *Continental Group, Inc. v. Amoco Chemical Corp.*, 614 F.2d 351, 356 n. 9 (3d Cir.1980). Those who depend on social security benefits for the maintenance of a home in the community would risk losing their homes if defendants are able to deprive them of even a portion of these benefits while they are institutionalized. Such a deprivation would constitute irreparable injury to the individual, to be sure, but would also violate this country's policy, so evident in the Social Security Act, of encouraging those suffering from mental illness to live in their communities when able to do so. Moreover, absent injunctive relief, representative payees who fail to use Social Security benefits to meet court judgments are assured that they will be held in contempt of court, yet if they turn over such funds, they may be unable to meet the current needs of the individual, as they are required to do under federal law. The practices of defendants threaten the well being of an institutionalized individual and the very ability of a representative payee to fulfill his or her responsibilities to that individual.

The harm to defendants given that an injunction will issue will be neither "irreparable" nor, I suggest, much more than an inconvenience. I recognize that defendants use the monies collected from plaintiffs as one, albeit assuredly minimal, source of revenues. If defendants should ultimately prevail on the merits, they may well be able to collect monies they are due without having suffered any substantial harm in the interim. Moreover, it is possible and, perhaps, probable that plaintiff Woodall may

volunteer to contribute to the cost of plaintiff Alfreda K.'s maintenance if Alfreda is currently institutionalized and if she becomes institutionalized in the future, just as it is possible or probable that other representative payees may contribute. And, finally, it is in the public interest to enjoin the actions of public officials when those actions are not in compliance with law.

### D

■ One issue remains. Plaintiffs also seek to enjoin the practice of defendants in seeking and obtaining judgments against individuals who are entitled to have their hospitalizations paid for through the federal Medicare program. Defendant Bartolino testified that he does not await a determination of an individual's Medicare status before assessing that individual for the costs of services that may be covered by Medicare. 42 U.S.C. § 1395cc(a)(1) states that in order to receive reimbursement for services, the provider of services must agree not to charge any individual for services covered under that subchapter. Such an agreement would not appear to comport with the practice of charging first, and then investigating Medicare coverage.

But the named plaintiffs in this action depend on Social Security benefits as their only source of income. Plaintiffs did not submit evidence specific to any other members of the class, but have represented that all members of the class are recipients of Social Security benefits and/or S.S.I. either as self payees or as representative payees and the court assumes that many or all are likewise dependent on those funds as their only source of income. Given this court's determination that Social Security benefits and S.S.I. cannot be taken by judicial order or otherwise against the payee's wishes, and there being no other source of income, there can be no charges "assessed" before Medicare coverage is determined. Neither a probability of success nor irreparable harm as to this issue has been shown, and the application for a preliminary injunction as to it is denied.[10]

The court will enter an appropriate order.

---

**10.** There are three additional motions pending before the court which will be disposed of herein. First, the intervenor, State of New Jersey, seeks to have the Secretary of the United States Department of Health and Human Services joined as a party defendant because "the validity of certain of the said Department's regulations and procedures ... are either challenged or are at issue." I am unaware that the federal regulations and procedures were or are under attack or otherwise so "at issue" to require or permit joinder. The motion is denied.

Second, defendants Bartolino and Mathesius seek "judgment on the pleadings" "because the complaint fails to state a claim upon which relief can be granted" and, thus, "summary judgment must be granted." Without pausing to pass upon the correct terminology for the motion, it is clear that no relief is sought against defendants in their individual capacities and the complaint is dismissed as to defendants as individuals. Defendant Mathesius also seeks dismissal insofar as he is sued in his official capacity. At this early juncture, that motion must be denied given the allegation in the complaint that defendant Mathesius "supervises, directs and controls all county administrative offices, including the Office of the County Adjuster." ¶ 24. This conclusion may be different at a later date. *See Monell v. New York City Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) and *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976).