Frank C. FETTERUSSO, Otto Hoffendiener and Leonard Giardiana, Plaintiffs,

v.

STATE OF NEW YORK; New York State Office of Mental Health, Defendants.

No. 87 Civ. 2566 (KTD).

United States District Court, S.D. New York.

July 19, 1989.

Sussman & Sussman, Yonkers, N.Y., Michael H. Sussman, of counsel, for plaintiffs.

Robert Abrams, Atty. Gen. of the State of N.Y., New York City, Yolanda M. Pizarro, Robert L. Schonfeld, Asst. Attys. Gen., of counsel, for defendants.

### MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Plaintiffs Fetterusso, Hoffendiener, and Giardiana, involuntary committees to the custody of defendant New York State Office of Mental Health ("OMH"), bring this action pursuant to 42 U.S.C. § 1983 (1982) complaining that their obligation to contribute to the cost of their care and maintenance pursuant to the N.Y. Mental Hyg. Law § 43.03(c) (McKinney 1988) violates their constitutional equal protection rights and the Supremacy Clause. The parties now cross-move for summary judgment pursuant to Fed.R.Civ.P. 56.

### FACTS

The relevant undisputed facts include the following. Fetterusso, Hoffendiener, and Giardiana were each committed to the custody of OMH by a New York criminal court order prior to 1985. The commitment or-

der was mandated by N.Y. Crim.Proc.Law § 330.20(6) (McKinney 1983 & Supp.1989) as a result of the criminal court's findings of (1) not guilty of charged crimes because of mental illness and (2) dangerousness because of mental illness. Individuals so committed remain within the jurisdiction of the criminal court system to the extent that a judicial hearing, at which the district attorney may present evidence, must be held prior to their release from the custody of OMH.

A 1985 amendment to § 43.03(c) provides that individuals committed pursuant to § 330.20(6), like civil committees but unlike any others committed pursuant to a criminal court order, are liable for the cost of their treatment. Such costs are currently assessed against Fetterusso, Hoffendiener, and Giardiana. Each assessment is satisfied to some extent out of monies received by representative Social Security benefit payees.

## DISCUSSION

■ The first question raised by the motions at bar is whether the State is acting contrary to the dictates of the equal protection clause by classifying § 330.20(6) committees, for fee liability purposes, with civil committees rather than with criminal court-ordered committees. In this regard, "[i]t is well established that social and economic legislation that does not discriminate on the basis of inherently suspect classifications or implicate 'fundamental' personal rights does not violate equal protection rights if it has any rational relationship to a legitimate governmental purpose." *Eisenbud v. Suffolk County*, 841 F.2d 42, 45 (2d Cir.1988). *See also Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985) (pointing out that the equal protection clause "is essentially a direction that all persons similarly situated should be treated alike").

Fetterusso, Hoffendiener, and Giardiana do not claim that obtaining financial contribution toward psychological care is not a legitimate governmental purpose. Neither do they claim that the distinction of which they complain discriminates against a sus-

pect class or implicates a fundamental right. Rather, they claim only that the distinction is not rational.

The State presents a rational basis to distinguish among criminal court-ordered committees in the committees status before the criminal court. There are apparently three categories of persons that may be ordered into the custody of the OMH by a criminal court: (1) those found not guilty by reason of mental illness; (2) those that cannot be tried by reason of mental illness; and, (3) those that were convicted prior to developing the need for care for their mental illness. *See* Defendant's Notice of Cross–Motion, Affidavit of Joel Dvoskin, PhD, ¶ 2.

It is true that each of the three groups are referred to the OMH by a criminal court order. However, only the members of the first group, which is the group at issue in the case at bar, have been finally determined by a court to be "not guilty" of the criminal charges filed against them. The distinguishing fact of this group's unique "not guilty" status provides an obvious rational basis for disparate legislative treatment and satisfies equal protection concerns. *Cf. Woe v. Cuomo*, 729 F.2d 96, 103 (2d Cir.) (upholding legislative distinction between voluntary and involuntary committees), *cert. denied*, 469 U.S. 936, 105 S.Ct. 339, 83 L.Ed.2d 274 (1984).

■ The final issue raised by the cross-motions for summary judgment is whether the State can collect Social Security benefits to satisfy the costs assessed pursuant to § 43.03(c). The parties here agree that federal law "unambiguously rules out any attempt to attach Social Security benefits." *Bennett v. Arkansas*, 485 U.S. 395, 108 S.Ct. 1204, 1205, 99 L.Ed.2d 455 (1988). More specifically, such benefits cannot be " 'subject to execution, levy, attachment, garnishment, or other legal process.' " *Id.* (quoting 42 U.S.C. § 407(a) (1982 & Supp. IV 1986)). Thus, the dispute at bar requires only a determination of whether or not the Social Security benefits used to satisfy the subject cost assessments are collected as a result of "legal process."

It is undisputed that the Social Security benefits collected by OMH in the case at bar are not attached by legal process. Rather, they are remitted by the representative payees designated pursuant to 42 U.S.C. § 405(j)(1) (1982 & Supp. IV 1986). As pointed out by OMH, the validity of the appointment of representative payees is not challenged here.

In accordance with federal regulations, a representative payee has the responsibility to:

> Use the payments he or she receives only for the use and benefit of the beneficiary in a manner and for the purposes he or she determines, under the guidelines in this subpart, to be in the best interests of the beneficiary.

20 C.F.R. § 404.2035(a) (1988). The regulations further define "for the use and benefit of the beneficiary" to include use "for the beneficiary's current maintenance." 20 C.F.R. § 404.2040(a) (1988). If the beneficiary is institutionalized "because of mental or physical incapacity, current maintenance includes the customary charges made by the institution, as well as expenditures for those items which will aid in the beneficiary's recovery or release from the institution or expenses for personal needs which will improve the beneficiary's conditions while in the institution." 20 C.F.R. § 404.2040(b) (1988).

Thus, the representative payee is not forced by legal process to use Social Security benefits to meet costs assessed under § 43.03(c). Rather, the federal regulations, in specifically providing for the application of Social Security benefits to the costs of care for mental incapacity, indicate that "a representative payee has a responsibility, if it is possible to do so, to make such payments." *Woodall v. Bartolino*, 700 F.Supp. 210 (D.N.J.1985). Such choice by one charged with determining the appropriate use of Social Security benefits does not conflict with the protection of 42 U.S.C. § 407(a).

For the foregoing reasons, Fetterusso, Hoffendiener, and Giardiana's motion for summary judgment is denied and OMH's cross-motion for summary judgment is granted.

SO ORDERED.