Raymond E. KRIEGBAUM, as Conservator of the Estate of Robert Kriegbaum; Walter Sendziak, as Conservator of the Estate of Leo Faulkner, on behalf of themselves and all others similarly situated, Plaintiffs–Appellees,

v.

Steven E. KATZ, M.D., and Richard Surles, M.D., Commissioner of New York State Office of Mental Health, Defendants–Appellants.

No. 812, Docket 89–7537.

United States Court of Appeals, Second Circuit.

Argued Feb. 12, 1990.

Decided July 16, 1990.

Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Richard J. Dorsey, Asst. Attys. Gen. (Robert Abrams, Atty. Gen., Albany, N.Y.), for defendants-appellants.

David Gerald Jay, Buffalo, N.Y., for plaintiffs-appellees.

Before CARDAMONE and WINTER, Circuit Judges, and KEENAN, District Judge.*

KEENAN, District Judge:

This appeal of a federal question case requires us to decide what measures New York State may employ to secure the use of an individual's social security benefits to defray the cost of the individual's institutional care after commitment pursuant to a finding that the individual was not guilty of charged crimes because of mental illness. The issues arise on defendants' appeal from the April 28, 1989, order of the District Court for the Western District of New York (Elfvin, J.), granting summary judgment in plaintiffs' favor enjoining defendants from taking any steps to reach plaintiffs' social security benefits to satisfy costs of their institutionalization. Defendants also appeal from a supplemental judgment, entered August 9, 1989, to the

extent it reaffirmed the April 28 judgment and granted plaintiffs-appellees leave to apply for an award of attorney's fees and costs. For the reasons developed below, we affirm in part and reverse in part.

## BACKGROUND

The facts are undisputed. Plaintiffs' wards Robert Kriegbaum and Leo Faulkner were involuntarily committed in 1976 and 1980, respectively, to the custody of the Commissioner of the New York State Office of Mental Health ("OMH") after being found "not responsible by reason of mental disease or defect" for crimes charged in Supreme Court, Erie County. N.Y.Crim.Proc. Law § 330.20 (McKinney 1983 and Supp.1990). Pursuant to Article 77 of the New York Mental Hygiene Law (McKinney 1988), each of the wards has a conservator who manages the ward's affairs. Robert Kriegbaum's brother, Raymond, serves as his conservator and Walter Sendziak, an attorney, is Leo Faulkner's conservator.

Robert Kriegbaum and Leo Faulkner each receive monthly social security disability payments, which are administered by their respective wards as representative payees. By 1988, Robert Kriegbaum, who has received monthly payments since 1968, had amassed $48,776.33 from disability payments and interest on savings and certificates of deposit. Raymond Kriegbaum maintains that since 1980, he has "spent many thousands of dollars of [Robert's] funds ... on his behalf for such items as clothing, life insurance, snacks, cigarettes, presents for the family for Christmas, Easter, birthday gifts for our mother," and various other expenses not discharged by the state. (Tr. 77).

Although it is unclear precisely how much money Leo Faulkner has accumulated from social security payments, Sendziak reported that in 1986, $18,114.86 was available in Faulkner's disability payments account. Like Raymond Kriegbaum, Sendziak readily acknowledges that he applies an

---

* The Honorable John F. Keenan, United States District Judge for the Southern District of New York, sitting by designation.

appreciable amount of his ward's disability payments to a "luxury fund," which provides Leo Faulkner with money "for clothing and other necessaries of life." (Tr. 85–86). Appellees urge that these expenditures are important because they lend a semblance of normal life to committed individuals.

Prior to 1985, New York State exempted all patients held pursuant to a criminal court order from paying the costs of their care in State mental health facilities. In 1985, however, the New York legislature amended § 43.03(c) of the Mental Hygiene Law to require those committed under N.Y. Crim.Proc. Law § 330.20(7) ("insanity acquitees") to pay the costs of their institutional care.[1]

Relying on this amendment to § 43.03, the OMH sent Raymond Kriegbaum and Walter Sendziak notices of charges for the institutional care of their conservatees since August 2, 1985 (the effective date of the amendment). The Kriegbaum invoice sought payment of $22,529.44 for services rendered through December 31, 1985. The OMH billed Sendziak $29,853.94 for the expenses of care incurred through September 23, 1987. (Tr. 88–89). Both conservators refused to pay. Other than repeated billings, the OMH has taken no additional action with respect to the Kriegbaum invoice. As to Sendziak, however, the New York State Attorney General's Office commenced a special proceeding in New York State Supreme Court, Erie County, to secure payment for OMH's services through Faulkner's social security benefits and to discharge Sendziak as Faulkner's conservator. That proceeding has been stayed pending resolution of this action.

In April 1988, appellees filed their amended complaint seeking injunctive relief and attorney's fees. The amended complaint alleged under 42 U.S.C. § 1983 (1982) that Mental Hyg. Law § 43.03(c) deprived appellees of their property without due process of law in violation of the fourteenth amendment. Appellees also urged that § 43.03(c) ran afoul of the Supremacy Clause,[2] since it conflicted with § 207 of the Social Security Act, 42 U.S.C. § 407(a) (1982 and Supp. V, 1987).

The District Court addressed these contentions on cross-motions for summary judgment.[3] In an opinion dated April 26, 1989, the Court held that although enforcement of § 43.03(c) by attempting to recoup money from the ward's social security benefits did not *per se* violate the due process clause, its application to plaintiffs was unconstitutional. Without distinguishing between the measures employed by OMH to reach each ward's disability benefits, Judge Elfvin ruled that § 43.03(c) could not be reconciled with 42 U.S.C. § 407(a) and therefore was unconstitutional under the Supremacy Clause. He then dismissed the amended complaint as to Steven E. Katz, M.D. because the amended complaint sought only equitable relief with respect to the operation of a state statute, relief which Dr. Katz was powerless to provide.[4] In a footnote, the Court declined to construe plaintiffs' prayer for relief as embracing liability for attorney's fees in connection with their request for injunctive

1. Amended § 43.03(c) of the Mental Hyg. Law provides:
   "Patients receiving services while being held pursuant to order of a criminal court, *other than patients committed to the department pursuant to section 330.20 of the criminal procedure law,* ... shall not be liable to the department for such services. Fees due the department for such services shall be paid by the county in which such court is located except that counties shall not be responsible for the cost of services rendered patients committed to the department pursuant to section 330.20 *of the criminal procedure law.*" (emphasis added).

2. "This Constitution, and the Laws of the United States which shall be made in Pursuance thereof ... shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. Const., Art. VI, cl. 2.

3. Plaintiffs also moved pursuant to Fed.R.Civ.P. 23 for class certification. Judge Elfvin denied this application, holding that plaintiffs did not establish the prerequisites to certification. Plaintiffs do not contest this ruling.

4. *Richard Surles, M.D.,* replaced Dr. Katz as Commissioner of OMH after the commencement of this action.

relief under § 1983. The District Court judgment was entered on April 28, 1990.

On May 3, 1989 plaintiffs moved pursuant to Fed.R.Civ.P. 59 to amend the District Court's judgment to reflect that the relief granted had a jurisdictional base in 42 U.S.C. § 1983, thereby enabling plaintiffs to move for an award of attorney's fees and costs under 42 U.S.C. § 1988 (1982). In a second opinion, dated August 1, 1989, the District Court amended its April 26 decision to permit plaintiffs to seek attorney's fees and costs under § 1988 because they had attained relief sought under § 1983. (Joint Appendix 119–20). The instant appeal followed.

On appeal, defendants argue that the broad compass of the District Court's decision improperly curtails OMH's ability to ensure that conservators perform their statutory and regulatory duties. They submit that the District Court has effectively prohibited OMH from applying the social security benefits of insanity acquittees to defray the costs of institutional care under any circumstances. We now turn to these contentions.

### DISCUSSION

Section 207 of the Social Security Act, 42 U.S.C. § 407(a) (1982 and Supp. V, 1987) provides that "none of the moneys paid or payable ... under [the Social Security Act] shall be subject to execution, levy, attachment, garnishment, or other legal process." The exemption from legal process created by § 407(a) seeks "to protect social security beneficiaries and their dependents from the claims of creditors." *Fetterusso v. State of New York*, 898 F.2d 322, 327 (2d Cir. 1990) (citations omitted).

It is elemental that the Supremacy Clause of the United States Constitution vitiates any state law inconsistent with an act of Congress. *See Hayfield Northern R.R. v. Chicago & North Western Transp. Co.*, 467 U.S. 622, 627, 104 S.Ct. 2610–2614, 81 L.Ed.2d 527 (1984). In *Bennett v. Arkansas*, 485 U.S. 395, 108 S.Ct. 1204, 99 L.Ed.2d 455 (1988) (per curiam), the Supreme Court invoked the Supremacy Clause to invalidate an effort by the State of Arkansas to attach the social security benefits of inmates at state prisons to defray the cost of maintaining the prisoners while incarcerated. Rejecting the State's argument that the Social Security Act contains an implied exception to the exemption from legal process when the State provides for the care and maintenance of a social security beneficiary, the Court ruled that "[s]ection 407(a) unambiguously rules out any attempt to attach Social Security benefits." *Id.* at 397, 108 S.Ct. at 1205. *Cf. Fetterusso, supra*, 898 F.2d at 328 ("[S]ection 407(a) is violated when the state places itself in the position of a preferred creditor or coerces payment from protected benefits.").

Appellants submit that we should not consider any of their efforts to require appellees to apply social security benefits to the cost of institutional care as "legal process." They characterize their actions against appellees in this case as no more than efforts to require conservators to abide by their statutory and regulatory duties. To this end, appellants point out that under the Social Security Act, payment of benefits may be remitted to a designated representative payee. *See* 42 U.S.C. § 405(j)(1) (1982 and Supp. V 1987). Federal regulations promulgated by the Secretary of Health and Human Services mandate that the representative payee "[u]se the payments he ... receives only for the use and benefit of the beneficiary in a manner ... he ... determines, under the guidelines in this subpart, to be in the best interests of the beneficiary." 20 C.F.R. § 404.2035(a) (1989).

The regulations define "for the use and benefit of the beneficiary" to include use for the "beneficiary's current maintenance." 20 C.F.R. § 404.2040(a) (1989). If the beneficiary is institutionalized "because of mental ... incapacity, current maintenance includes the customary charges made by the institution ... or expenses for the personal needs which will improve the beneficiary's conditions while in the institution." *Id.* at § 404.2040(b).

■ Appellants' construction of the regulations described above perceives an en-

forceable obligation on the representative payee's part to channel a portion of the institutionalized beneficiary's social security benefits into the cost of institutional care. This interpretation, however, finds no support in the regulations.

Concededly, 20 C.F.R. § 404.2035(a) requires a representative payee to use social security disability payments for the use and benefit of the beneficiary. Section 407's "broad bar against the use of any legal process to reach all social security benefits," however, prohibits enforcement of a representative payee's duties through a creditor's attempt to coerce disbursement of moneys. *Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 417, 93 S.Ct. 590, 592, 34 L.Ed.2d 608 (1973). Rather, the Social Security Administration alone has the power to enforce the duties of a representative payee through the appointment of a new payee when the current payee "[h]as not used the benefit payments on the beneficiary's behalf in accordance with the guidelines." 20 C.F.R. § 404.2050. *See Woodall v. Bartolino*, 700 F.Supp. 210, 218 (D.N.J.1985).

We therefore conclude that the District Court properly ruled that Mental Hyg. Law § 43.03(c) is unconstitutional as applied to Sendziak because appellants employed "legal process" to procure Leo Faulkner's social security benefits in violation of 42 U.S.C. § 407(a). The New York State Attorney General commenced a special proceeding under Mental Hyg. Law § 77.31 on OMH's behalf to compel Sendziak's payment of Faulkner's social security payments. Appellants urge that the proceeding is not "legal process" within the understanding of § 407(a) because a special proceeding is merely a motion. As this Court recently stated in discussing § 407(a), "Congress intended the words 'or other legal process' to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions." *Fetterusso, supra*, 898 F.2d at 328. Bearing this in mind, appellants' position is flawed in two respects.

First, a special proceeding is not tantamount to a motion. A motion is an application for an order in a pending action or proceeding in which jurisdiction has already been acquired over the defendant. A special proceeding, on the other hand, "is an independent application to a court for a judgment." N.Y.Civ.Prac. § 403, McLaughlin, Practice Commentaries (McKinney 1990). Second, it cannot be seriously urged that this Court's expansive definition of "legal process" does not encompass appellants' actions in haling Sendziak into court to compel payment for Faulkner's institutional care from Faulkner's social security benefits.

■ We disagree, however, with the District Court's conclusion that § 43.03(c) is unconstitutional as applied to Kriegbaum. It is undisputed that OMH's efforts to obtain Robert Kriegbaum's benefits were confined to repeated billings for the cost of institutional care. No element of compulsion attended OMH's actions. The record does not display that any threats, express or implied, accompanied the billings. Accordingly, the grant of summary judgment and injunctive relief in Kriegbaum's favor was improper.

■ Although the parties did not brief the issue on appeal, we must briefly address Judge Elfvin's August 1 decision granting appellees leave to apply for an award of attorney's fees and costs under 42 U.S.C. § 1988. We agree with Judge Elfvin's reasoning in permitting Sendziak to apply for attorney's fees and costs and affirm that portion of the August 1 decision. Because the granting of summary judgment in Kriegbaum's favor was improper, however, the decision allowing him to apply for attorney's fees and costs must also be reversed.

### CONCLUSION

For the foregoing reasons, we affirm in part and reverse in part the granting of summary judgment. We vacate the judgment in favor of Kriegbaum and remand to the District Court for further proceedings consistent with this decision.