CHADRON OPERA HOUSE COMPANY, APPELLANT, V. SHELDON M. LOOMER ET AL., APPELLEES.

FILED MAY 5, 1904.   No. 13,585.

**Trade Name.** To entitle a party to an injunction restraining another from the use of a trade mark or trade name, he must make it appear, with at least reasonable certainty, that his adoption of the name was prior in time to that of his adversary, that he adopted and made use of it in such manner as to reasonably apprise the public that he intended it as a distinctive appellation for his trade, commodity or place of business, and that it was not, at the time of his attempted appropriation of it, in common or general use in connection with like businesses, commodities, buildings or localities.

APPEAL from the district court for Dawes county: WILLIAM H. WESTOVER, JUDGE. *Affirmed.*

*Allen G. Fisher,* for appellant.

*A. W. Crites, contra.*

AMES, C.

This is an appeal from a decree dismissing the plaintiff's action after a trial upon the merits. Appellant, a corporation, brought the suit as lessee of a building in Chadron, styled "The Chadron Opera House," seeking to enjoin the use of the same name for the carrying on of a business similar to that of the plaintiff in, and in connection with, another building in Chadron.

The evidence is in some conflict and confusion but, as nearly as we can make out, the appellees, defendants below, are conducting their business in a frame building, erected in 1886 for a skating rink, but provided with a stage and drop curtains, and some other appliances adapt-

53

ing it to use as a place of dramatic entertainment, to which it became subsequently mainly, if not solely, devoted. It seems to have been known for some time by the names, indifferently, of "The Rink" and "The Rink Opera House," and is still perhaps more or less commonly known by one or the other, or both. In or about 1896, defendants began, in correspondence and conversation with play actors and others, to style their building the "Chadron Opera House," and some three years later caused that name to be painted upon its outer walls. Since that time the three names have more or less generally and indiscriminately been applied to it by the public.

In 1889, one Nelson erected the building, of brick, in which the business of appellant is carried on. The lower story of the structure was and is adapted to and used for business rooms, and the rear part of the upper story for a place of entertainment. Upon a stone let into the front of it were engraved the words "P: B. Nelson, Opera Block." Subsequently, Nelson and the public habitually referred to the building indiscriminately by the names "Nelson's Opera House" and "The Opera House." Shortly before the beginning of this action, he and appellant adopted the custom of calling it the "Chadron Opera House," but that was not until after that name had been painted on the defendants' building and they had been using it some time in their correspondence, conversation and otherwise. As to whether Nelson or the defendants first begun this latter use of the name, the evidence is in conflict and the fact uncertain. The plaintiff was incorporated in April, 1903, by the name of the "Chadron Opera House Company," apparently about the time Nelson begun adding the name of the town to that of his building. We do not think there is thus disclosed such a distinctive prior adoption and appropriation of the name by the appellant as to entitle it to the exclusive enjoyment of it, or to the relief prayed. For some unaccountable reason, the briefs and arguments of both counsel are on the same side of this question, and that, the one which is the oppo-

site of that which seems to us the more applicable to the circumstances.

It seems evident to us that, before one can avail himself of the extraordinary remedy of injunction to protect him in the exclusive possession and enjoyment of a trade mark or trade name, he must have acquired, to use a common law expression, an exclusive "seizin" of it. This record does not disclose that either of the litigants have done so. On the contrary it is apparent that both have made use of the coveted name, if not in common, at least contemporaneously, and, for a time at least, each without the knowledge of the other, and without any definite intention to enjoy such use exclusively. In other words, neither seems, until about the time this litigation was begun, to have attempted to appropriate the name to his own peculiar and exclusive use, or to adopt it as a sole or principal designation of his building or business.

We have ourselves not succeeded in finding decisions precisely in point in this respect, but we think that the general principles underlying the authorities upon this subject uphold the conclusion that, to entitle a party to the remedy here sought, he must make it appear, with at least reasonable certainty, that his adoption of the name was prior in time to that of his adversary; that he adopted and made use of it in such manner as would reasonably apprise the public that he intended it as a distinctive appellation for his trade, commodity or place of business, and that it was not, at the time of his attempted appropriation of it, in common or general use in connection with like businesses, commodities, buildings or localities. See 26 Am. and Eng. Ency. Law (1st ed.), p. 324, and notes. However, whether the foregoing formula is correct or not, we are satisfied that this record is insufficient to support a judgment for the plaintiff, and recommend that the judgment of the district court be affirmed.

LETTON and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing

opinion, it is ordered that the judgment of the district court be

AFFIRMED.