CONSOLIDATED FUEL COMPANY, APPELLEE, V. WILLIAM R. BROOKS ET AL., APPELLANTS.

FILED MAY 13, 1912.          No. 16,712.

Trade-Marks: INJUNCTION. A jobbing corporation which had established an extensive trade by purchasing a particular standard and preparation of coal from the South Canon Coal Company at Big Four, Colorado, where it is known as "Carbon Canon Coal," and by selling it to retailers by the trade-name of "Cristo Canon Coal," *held* entitled to an injunction to protect the use of that trade-name as against a former manager who engaged in the same business as a competitor and used "Cristo Canon" as a trade-mark for the same coal for the purpose of procuring trade which in the ordinary course of business would go to his former employer.

APPEAL from the district court for Lancaster county: ALBERT J. CORNISH, JUDGE. *Affirmed.*

*T. J. Doyle* and *G. L. De Lacy*, for appellants.

*C. E. Abbott* and *Field, Ricketts & Ricketts, contra.*

ROSE, J.

Plaintiff and defendants are rival jobbers in coal, and both assert the exclusive right to use in the trade the name "Cristo Canon" to describe fuel mined by and purchased from the South Canon Coal Company at Big Four, Colo-

rado, where it is known as the "Carbon Canon Coal." From a decree perpetually enjoining defendants from using the name in controversy for the purpose stated, they have appealed to this court.

The following propositions of law and fact are urged on behalf of defendants to defeat the injunction: Defendants invented the name. They were the first to register with the secretary of state "Cristo Canon" as a trade-name for coal, and a similar registry by plaintiff was afterward rejected. By using that name they did not attempt to sell their own coal as that of plaintiff. They did not perpetrate a fraud on the public, because they sold by the same name the same grade and quality of coal from the same mine. Plaintiff did not own the mine, or any interest in it, or control the output. Any wholesaler could buy the coal identified by plaintiff as "Cristo Canon" at the same mine from the same mining company and sell it to the trade. The name is both generic and geographical, and therefore plaintiff could not acquire the exclusive right to use it as a trade-mark.

Conceding the correctness of the foregoing propositions urged by defendants, for the purposes of this case, but for no other, it does not necessarily follow that the injunction was erroneously granted. The questions are: As between the parties to the suit, is plaintiff entitled to the exclusive use of the name? Are defendants in using the name perpetrating on plaintiff a fraud which equity will stop? Plaintiff had a right to buy coal of a particular standard and preparation from the South Canon Coal Company at Big Four, Colorado, where the coal is known as the "Carbon Canon Coal," label it "Cristo Canon" and sell it to retailers under that name, provided that in doing so the name had never before been used for that purpose, that there was no objection on the part of the mining company, and that plaintiff did not deceive, mislead or injure retailers or the public or interfere with any right of a competitor. The record justifies a finding that plaintiff so adopted and used the name. If the name is generic, or

geographical, facts not established, the right to thus adopt and use it nevertheless existed, though it might not be protected for all purposes. *Lee v. Haley*, 5 Ch. App. (Eng.) *155; *McAndrew v. Bassett*, 4 De G. J. & S. (Eng. Ch.) *380; *Amoskeag Mfg. Co. v. Spear & Ripley*, 4 Sandf. (N. Y.) 599; *Newman v. Alvord*, 51 N. Y. 189. Other competitors of plaintiff purchased the same coal at the same mine and sold it by other names of their own selection. Plaintiff's use of the name "Cristo Canon" has only been questioned or disturbed by defendants. As against them, was the injunction properly granted? Plaintiff is a corporation. When defendant Brooks was its manager, it created a large demand for coal to which it had given, with his consent, the trade-name in controversy. As a result it transacted an extensive business as a jobber. It was the exclusive source of all coal on the market by the name of "Cristo Canon." Its customers were pleased with the fuel. They praised its preparation and quality. After the character of the coal, designated in the trade by that name, and plaintiff's reputation for fair dealing had been established, Brooks left its employ at Fremont, promptly registered in his own name "Cristo Canon" as a trade-mark for coal, organized the W. R. Brooks Coal Company (defendant), started in business at Lincoln as a competitive jobber in plaintiff's territory, advertised to sell "Cristo Canon Coal," sent solicitors among plaintiff's customers, and, for the purpose of promoting his own enterprise, made use of his knowledge of plaintiff's territory, of its customers, of its business, and of the fact that other dealers bought and sold the same coal under different names.

Following the doctrine of the English courts of chancery, Vice-Chancellor Van Fleet stated the requisites for acquiring title to a trade-mark as follows: "First, the person desiring to acquire title must adopt some mark not in use to distinguish goods, of the same class or kind, already on the market, belonging to another trader; second, he must apply his mark to some article of traffic;

and, third, he must put his article, marked with his mark, on the market." *Schneider v. Williams,* 44 N. J. Eq. 391.

With these requisites plaintiff complied. While it did not own the mine or control the output, it owned the coal offered to the trade by the name "Cristo Canon." Defendants understood and participated in the means through which plaintiff built up its trade in, and created the demand for, fuel thus designated. The manifest purpose of defendants in using the name "Cristo Canon" and in pursuing the methods already described was to divert to themselves the benefit of plaintiff's reputation for honesty and fair-dealing and to procure trade which in the ordinary and legitimate course of business would go to plaintiff as a proper reward of rectitude and enterprise. Their competition was unfair and their conduct was a fraud on plaintiff. The registration of the name with the secretary of state was part of the fraudulent purpose and is no protection to defendants. In discussing the use of the word "Anatolia" as a trade-name for licorice, Lord Chancellor Westbury said: "There is the deliberate imitation of a mark previously existing in the market. The thing is done in order that the rival article of the defendants' manufacture may be brought into the market in competition with that which is already there. There is nothing, in a word, which is necessary for the interposition of the court which is wanting on the present occasion. But, it is urged on behalf of the defendants, this word Anatolia is a general expression; is, in point of fact, the geographical designation of a whole tract of country wherein licorice root is largely grown, and is therefore a word common to all, and in it there can be no property. That argument is merely a repetition of the fallacy which I have frequently had occasion to expose. Property in the word for all purposes can not exist; but property in that word, as applied by way of stamp upon a particular vendible article, as a stick of licorice, does exist the moment the article goes into the market so stamped, and there obtains acceptance and reputation whereby the stamp gets cur-

rency as an indication of superior quality, or of some other circumstance which renders the article so stamped acceptable to the public. Lastly, it is urged on behalf of the defendants, with respect to the costs of this suit, that they were unwilling to contest the right of the plaintiffs. When they imitated the mark they knew that there was that mark in use, and they intentionally imitated it. It is probable that at the time they were not aware that it was the mark of the plaintiffs. But if a man finds an article sent to him from the market bearing a particular stamp, and he intentionally appropriates that stamp, and thenceforth uses it for the purpose of designating his own article, laying aside the mark that he had previously used, and appropriating that which he ought to have inferred was the property of another, he must take the consequences." *McAndrew v. Bassett,* 4 De G. J. & S. (Eng. Ch.) *380. In *Perry v. Truefitt,* 6 Beav. (Eng.) 66, Lord Langdale observed: "I own it does not seem to me that a man can acquire a property merely in a name or mark; but whether he has or not a property in the name or the mark, I have no doubt that another person has not a right to use that name or mark for the purposes of deception, and in order to attract to himself that course of trade, or that custom, which, without that improper act, would have flowed to the person who first used, or was alone in the habit of using, the particular name or mark." This doctrine has been recognized in a former opinion of this court. *Chadron Opera House Co. v. Loomer,* 71 Neb. 785. On principle, plaintiff's right to the name is exclusive as against defendants. *Newman v. Alvord,* 51 N. Y. 189; *Amoskeag Mfg. Co. v. Spear & Ripley,* 4 Sandf. (N. Y.) 599; *Lee v. Haley,* 5 Ch. App. (Eng.) *155.

The judgment of the district court is therefore

AFFIRMED.

SEDGWICK, J., concurs in conclusion.