IN RE INTEREST OF CHARLENE R. BATTIATO,
AN INCAPACITATED PERSON.
NEBRASKA DEPARTMENT OF HEALTH AND HUMAN SERVICES
FINANCE AND SUPPORT, APPELLANT, V. MARY L. WILSON,
SUCCESSOR CONSERVATOR AND SUCCESSOR GUARDIAN, APPELLEE.
613 N.W.2d 12

Filed June 23, 2000.   No. S-99-1120.

Don Stenberg, Attorney General, Royce N. Harper, and Gerald W. Pankonin, Special Assistant Attorney General, for appellant.

Richard S. McMillin, P.C., of Marks, Clare & Richards, for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.

## NATURE OF CASE

Charlene R. Battiato, an incapacitated person, has a monthly income of $814.99, derived entirely from Supplemental Security Income and Railroad Retirement Act benefits. The cost of Charlene's nursing home care exceeds her entitlement income, so the Nebraska Department of Health and Human Services Finance and Support (the Department) compensates Charlene's nursing home for the remaining expenses. The primary question presented in this appeal is whether attorney fees incurred on behalf of Charlene may be paid from her federal entitlement income.

## FACTUAL AND PROCEDURAL BACKGROUND

Charlene is a severely mentally retarded spastic quadriplegic with seizures, who cannot talk, is visually and hearing impaired, and cannot care for or feed herself. In 1989, the county court appointed Charlene's parents, Charles and Rose Battiato, to be Charlene's conservators and guardians. In 1993, Charlene was transferred from her parents' home to the Maple Crest nursing home (Maple Crest) in Omaha, Nebraska. In 1996, Charles died, and Rose, due to physical infirmity, resigned as Charlene's conservator and guardian.

Attorney Joseph P. Inserra was appointed by the county court as Charlene's successor conservator and guardian. In 1998, Donna J. Compau was appointed by the county court as successor conservator and guardian to Inserra. Shortly thereafter, the county court entered an order disposing of moneys paid into the court from a bank account held in Charlene's name. The county court ordered that the bulk of the moneys be paid to Maple Crest to settle outstanding debt and that the remaining moneys be paid to Inserra in partial satisfaction of outstanding legal expenses. The county court ordered that the balance of Inserra's attorney fees should be the subject of a plan to be presented to the county court.

Compau filed a plan with the county court recommending that the attorney fees be paid from Charlene's entitlement income and that while such payments were being made, the Department should allow the expense and provide additional

compensation to Maple Crest for the expense of Charlene's care. Compau later filed a "Notice of Petition for Approval of Account of Conservator," stating that the Department had declined to approve Compau's plan for payment of attorney fees and requesting the county court to enter an order directing that the attorney fees be paid from Charlene's entitlement income and that in the interim, the Department be ordered to pay a corresponding increase in the cost of Charlene's care at Maple Crest.

The Department filed an objection to the allowance of attorney fees. The county court overruled the objection and entered an order directing the Department to "develop a budgetary plan and implement the plan . . . setting aside at least one half of the ward's monthly income to pay the attorney fees and costs to said attorneys with the plan to remain in effect until the fees and costs are paid in full." The county court ordered that the fees to Inserra be paid, as well as additional attorney fees claimed by Richard S. McMillin, Compau's attorney. The county court further ordered that the Department "shall pay the increased costs of the ward's nursing home care for the duration of reduction of ward's income while said attorney fees and costs are being paid under the plan." The Department appeals. We note that in September 1999, the county court discharged Compau of her duties as successor conservator and successor guardian and appointed Mary L. Wilson in her stead.

## ASSIGNMENTS OF ERROR

The Department assigns, restated, that the county court erred in determining that federal anti-attachment statutes did not apply to the payment of attorney fees and that the doctrine of "primary jurisdiction" should have been applied to the case.

## STANDARD OF REVIEW

When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Cole v. Loock, ante* p. 292, 609 N.W.2d 354 (2000); *Schrader v. Farmers Mut. Ins. Co., ante* p. 87, 608 N.W.2d 194 (2000).

## ANALYSIS

### FEDERAL ANTI-ASSIGNMENT STATUTES

The Social Security Act provides:

> The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

42 U.S.C. § 407(a) (1994).

Similarly, the Railroad Retirement Act states in relevant part that "no annuity or supplemental annuity shall be assignable or be subject to any tax or to garnishment, attachment, or other legal process under any circumstances whatsoever, nor shall the payment thereof be anticipated." 45 U.S.C. § 231m(a) (1994).

This court has held with respect to § 407 that it

> operate[s] to protect the Social Security benefits, which may be paid to persons such as plaintiffs, from judicial proceedings against persons such as plaintiffs. Judgment creditors in legal proceedings may not use the proceeds of the Social Security system to satisfy private obligations. . . .
>
> . . . .
>
> . . . § 407 is concerned only with the protection of Social Security benefits from legal proceedings by creditors.

*Boersma v. Karnes*, 227 Neb. 329, 336-37, 417 N.W.2d 341, 347 (1988). See, also, generally, *Bennett v. Arkansas*, 485 U.S. 395, 108 S. Ct. 1204, 99 L. Ed. 2d 455 (1988); *Philpott v. Essex County Welfare Board*, 409 U.S. 413, 93 S. Ct. 590, 34 L. Ed. 2d 608 (1973); *Havelock Bank v. Hog Confinement Systems*, 214 Neb. 783, 335 N.W.2d 765 (1983).

There is no dispute that the federal benefits received by Charlene in this case are within the scope of §§ 407 and 231m(a). The critical issue presented by the Department's assignment of error, then, is whether the county court's order, in response to the motion made by Compau, constituted "legal process" within the meaning of §§ 407 and 231m(a).

Authority from federal and state courts indicates that § 407 does not apply to voluntary payments made by a recipient

of Social Security benefits. See, e.g., *Johnson v. Wing*, 178 F.3d 611 (2d Cir. 1999), *cert. denied* 528 U.S. 1162, 120 S. Ct. 1177, 145 L. Ed. 2d 1085 (2000); *Fetterusso v. State of N.Y.*, 898 F.2d 322 (2d Cir. 1990); *Moore v. Colautti*, 483 F. Supp. 357 (E.D. Pa. 1979), *affirmed* 633 F.2d 210 (3d Cir. 1980); *C.G.A. v. State*, 824 P.2d 1364 (Alaska 1992); *Tunnicliff v. Com., Dept. of Public Welfare*, 483 Pa. 275, 396 A.2d 1168 (1978); *Russo v. Russo*, 1 Conn. App. 604, 474 A.2d 473 (1984); *French v Dep't of Soc Serv*, 92 Mich. App. 701, 285 N.W.2d 427 (1979). But see *U.S. v. Univ. Hosp. of State Univ. of New York*, 575 F. Supp. 607 (E.D.N.Y. 1983), *affirmed* 729 F.2d 144 (2d Cir. 1984).

The Second Circuit has stated:

> Congress intended the words "or other legal process" to embrace not only the use of formal legal machinery but also resort to express or implied threats and sanctions. . . . Thus, section 407(a) is violated when the state places itself in the position of a preferred creditor or coerces payment from protected benefits. *Philpott* [*v. Essex County Welfare Board, supra,*] and the statute, however, do not eliminate the underlying debt but merely preclude states from enforcing an obligation against protected federal funds.

*Fetterusso v. State of N.Y.*, 898 F.2d at 328. The Second Circuit concluded in that case that § 407 had not been violated by New York's collection of Social Security benefits to pay for the care and treatment of individuals in state institutions, as there was "no basis for concluding that any of the appellants did not voluntarily agree to the use of their social security benefits to pay the costs of their care and treatment." *Id.*

This reasoning regarding § 407 is persuasive and applies equally to the interpretation of the similar language of § 231m(a). In the instant case, the payment of Charlene's attorney fees has been volunteered, not by Charlene, but by Compau as Charlene's conservator and guardian.

The appointment of a conservator vests in him or her title as trustee to all property of the protected person, presently held or thereafter acquired, including title to any property theretofore held for the protected person by custodians or attorneys in fact. Neb. Rev. Stat. § 30-2649 (Reissue 1995).

Neb. Rev. Stat. § 30-2653(c) (Reissue 1995) provides, in relevant part:

A conservator, acting reasonably in efforts to accomplish the purpose for which he [or she] was appointed, may act without court authorization or confirmation to

. . . .

(19) pay or contest any claim; to settle a claim by or against the estate or the protected person . . . by compromise, arbitration, or otherwise.

Neb. Rev. Stat. § 30-2654(a) (Reissue 1995) further provides, in relevant part:

(2) The conservator is to expend or distribute sums reasonably necessary for the support, education, care or benefit of the protected person with due regard to (i) the size of the estate, the probable duration of the conservatorship and the likelihood that the protected person, at some future time, may be fully able to manage his [or her] affairs and the estate which has been conserved for him [or her]; (ii) the accustomed standard of living of the protected person and members of his [or her] household; (iii) other funds or sources used for the support of the protected person.

. . . .

(4) Funds expended under this subsection may be paid by the conservator to any person, including the protected person, to reimburse for expenditures which the conservator might have made, or in advance for services to be rendered to the protected person when it is reasonable to expect that they will be performed and where advance payments are customary or reasonably necessary under the circumstances.

The Department has not challenged the propriety of the attorney fees or the payment thereof, nor is there any question presented regarding a breach of Compau's fiduciary duty in allowing payment of the fees. The sole argument advanced by the Department in this regard is that payment of the fees, pursuant to the allowance of the county court, violates §§ 407 and 231m(a). Those sections, however, would not preclude Charlene from paying attorney fees with her federal entitlement income if she chose and was competent to do so. Given that fact, those

sections cannot bar Compau, as Charlene's conservator and guardian, from making that determination on her behalf. See *Texas Baptist Children's Home v. Corbitt*, 321 S.W.2d 610 (Tex. Civ. App. 1959).

The Department's reliance on *Woodall v. Bartolino*, 700 F. Supp. 210 (D.N.J. 1985), is misplaced. In that case, and in *Kriegbaum v. Katz*, 909 F.2d 70 (2d Cir. 1990), the trial courts ordered payment of debts owed to New Jersey and New York, respectively, from accumulated money in the possession of a guardianship estate. Those cases stand for the principle that § 407 protects income received by a guardian where "legal process" within the meaning of § 407 is used to obtain payment of a debt. In this case, however, Compau is not resisting payment of the debt. Therefore, no "legal process" has been utilized within the meaning of §§ 407 and 231m(a).

Although the county court in this case entered an order allowing payment of the attorney fees, the court did so at the express request of Compau. Thus, "legal process" was not used within the meaning of §§ 407 and 231m(a). Compau determined that the debt should be paid and went to the court to secure the approval of the county court in advance for payment of the debt and to obtain an order for the Department to supplement Charlene's income to fully pay Maple Crest for the costs of Charlene's care.

The Department is not, in this appeal, challenging that part of the county court's order directing the Department to supplement Charlene's income while her federal entitlement income is being diverted to pay the attorney fees. The Department's assignments of error are limited to the effect of the federal anti-attachment statutes and the application of the doctrine of primary jurisdiction, discussed below. These assignments of error do not address the propriety of ordering the Department to supplement Charlene's income, and we do not comment on that issue.

The Department's first assignment of error is without merit. The county court order was not "legal process" within the meaning of §§ 407 and 231m(a), but was simply a ratification of Compau's determination that Charlene's attorney fees should be paid from her only available source of income. As Charlene's conservator and guardian has volunteered payment of the debt

on Charlene's behalf, no coercive "legal process" has been invoked, and federal law has not been violated.

## PRIMARY JURISDICTION

The Department argues that the county court should have applied the doctrine of primary jurisdiction and referred the terms of Charlene's payment of the attorney fees to the Department.

The primary jurisdiction doctrine applies whenever enforcement of a claim, originally cognizable in the courts, requires the resolution of issues that have been placed within the special competence of an administrative body in accordance with the purposes of a regulatory scheme. *Humphrey Feed & Grain, Inc. v. Union P. R.R. Co.*, 199 Neb. 189, 257 N.W.2d 391 (1977). Whether the purposes of the administrative act require that the administrative agency should first pass on a question depends on whether the question raises issues of policy that should be considered by the administrative agency in the interests of uniformity and administrative expertise. See *id.*

Preliminary resort to the administrative agency is required where the inquiry is essentially one of fact and of discretion in technical matters and when uniformity can be secured only if determination is made by that agency. See *id.* The effect of the application of the doctrine of primary jurisdiction is to preclude resorting to the courts in the first instance, or to preclude a court from supplying a remedy, or passing upon particular issues until the issues have been passed upon by the administrative agency. *Id.* The nature of the controverted question and the nature of the inquiry necessary for its solution are the determining factors in regard to application of the doctrine of primary jurisdiction. *Id.*

The doctrine does not apply where a pure question of law is at issue. *Aged Hawaiians v. Hawaiian Homes Com'n*, 78 Haw. 192, 891 P.2d 279 (1995), *cert. denied* 516 U.S. 819, 116 S. Ct. 77, 133 L. Ed. 2d 36. See, also, *Baltimore & Ohio Chicago R. Co. v. Wisconsin Central*, 154 F.3d 404 (7th Cir. 1998), *cert. denied* 526 U.S. 1019, 119 S. Ct. 1254, 143 L. Ed. 2d 351 (1999); *Gross Common Carrier v. Baxter Healthcare Corp.*, 51 F.3d 703 (7th Cir. 1995); *I. C. C. v. Chicago, Rock*

*Island and Pacific Railroad Co.*, 501 F.2d 908 (8th Cir. 1974), *cert. denied* 420 U.S. 972, 95 S. Ct. 1393, 43 L. Ed. 2d 652 (1975); *Kovarsky v. Brooklyn Union Gas. Co.*, 279 N.Y. 304, 18 N.E.2d 287 (1938). See, also, generally, 2 Am. Jur. 2d *Administrative Law* § 515 (1994). The doctrine does not apply in relation to a question which, while properly determinable by an administrative tribunal, does not involve a question of fact, but one of pure law, is determinable apart from the exercise of administrative discretion, and the requisite uniformity of determination is attainable otherwise than by confining determination of the question to the administrative tribunal. *Id.*, citing *Brown Lumber Co. v. L. & N. R. Co.*, 299 U.S. 393, 57 S. Ct. 265, 81 L. Ed. 301 (1937).

Consequently, the initial inquiry for this court is the nature of the question the Department claims should have been referred to the Department as the relevant administrative agency. See *Humphrey Feed & Grain, Inc. v. Union P. R.R. Co., supra.* In that regard, the Department's argument is that

> [t]here is a distinct factual question regarding the application of the "special requirements" provision of the Department's regulations. . . .
>
> [The county court's] order violates the doctrine of primary jurisdiction because the Court made a ruling that more properly lies within the purview of the administrative agency which not only has the legislative mandate to administer the Medicaid rules and regulations, but also has the knowledge and expertise to properly interpret and apply these regulations.

Brief for appellant at 9.

■ Contrary to the Department's assertion, however, the interpretation of administrative regulations presents a question of law. See, *A & D Tech. Supply Co. v. Nebraska Dept. of Revenue, ante* p. 24, 607 N.W.2d 857 (2000); *Schmidt v. State*, 255 Neb. 551, 586 N.W.2d 148 (1998); *Vinci v. Nebraska Dept. of Corr. Servs.*, 253 Neb. 423, 571 N.W.2d 53 (1997); *Southeast Rur. Vol. Fire Dept. v. Neb. Dept. of Rev.*, 251 Neb. 852, 560 N.W.2d 436 (1997); *Inner Harbour Hospitals v. State*, 251 Neb. 793, 559 N.W.2d 487 (1997). The Department argues that it has the expertise to interpret its own regulations and federal medi-

caid regulations. Such interpretation, however, is clearly a question of law; this case presents no dispute regarding the underlying factual circumstances, and the Department's expertise in interpreting regulations is certainly no greater than that of the courts. Since the case presents only questions of law, the doctrine of primary jurisdiction is inapposite.

We are aware of authority stating that the primary jurisdiction doctrine does not apply where the agency to which the case would be referred is a party to the action before the court. See *Austin Lakes Joint Venture v. Avon Util.*, 648 N.E.2d 641 (Ind. 1995). But see *Luskin's v. Consumer Protection*, 338 Md. 188, 657 A.2d 788 (1995). As we have determined that the doctrine of primary jurisdiction does not apply to the issues presented in this case, we need not comment on the question of whether the administrative agency to which the case would be referred can invoke the doctrine where the agency is itself a party to the court proceedings. An appellate court is not obligated to engage in an analysis which is not needed to adjudicate the case and controversy before it. *Brockhaus v. Lambert, ante* p. 160, 608 N.W.2d 588 (2000).

The Department's assignment of error is without merit. The only issues the Department claims should have been referred to it are issues of regulatory interpretation, presenting questions of law outside the scope of the primary jurisdiction doctrine.

## CONCLUSION

The federal statutes cited by the Department do not preclude Charlene, or her legal conservator and guardian, from voluntarily paying attorney fees incurred on Charlene's behalf. The doctrine of primary jurisdiction does not apply, because the questions presented in this appeal are questions of law fully within the competence of the court. As the Department's assignments of error are without merit, the judgment of the county court is affirmed.

AFFIRMED.